# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ERON BUCCIARELLI-TIEGER, an individual; et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) No. 06 C 4258<br>) |
| VICTORY RECORDS, INC., an Illinois corporation; et al., | )<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, individually and collectively, as Hawthorne Heights ("HH"), a musical group, filed this action on August 7, 2006, against defendants, Victory Records, a record company, its CEO, Anthony Brummel, and the company's publishing arm, Another Victory, alleging willful copyright and trademark violations; unfair competition, in violation of the Lanham Act; and several state law claims. The complaint also seeks a declaratory judgment as to the nature of the agreement between plaintiffs and defendants. On August 28, 2006, plaintiffs filed a motion pursuant to Federal Rule of Civil Procedure 42(b), to bifurcate the declaratory judgment claim from the others, and for expedited discovery as to that claim. Defendants filed their answer on September 8, 2006, along with several counterclaims. On September 22, 2006, defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(c). Preliminary determinations were made on this motion by Judge Shadur sitting in our stead on October 18, 2006 (*see* def. mo. for ruling, exh. B) On January 10, 2007, we offered further guidance, without ruling (docket no. 55). Today we rule in full on defendants' motion, granting it in part and denying it in part.

## BACKGROUND

The following facts are taken generally from the pleadings. Where the facts are contested, we draw, where possible, from the exhibits accompanying the pleadings. Plaintiffs are all residents of Ohio and comprise a musical band called Hawthorne Heights. On or about December 11, 2003, HH entered into an agreement with defendants – which was amended on or about April 29, 2004 (collectively referred to as "the agreement") – for a four-album deal, with irrevocable consecutive options granted to defendants for the second, third and fourth albums. Plaintiffs were to be paid royalties corresponding to album sales, and the agreement included a number of other terms, including territory, publishing, recording advances, recoupable costs, merchandising, touring, and accounting procedures. Pursuant to the agreement, HH delivered both audio and visual records to defendants for two albums which were released on June 8, 2004, and February 28, 2006, respectively. A DVD was released in or about January 2006.

Prior to the release of the second album in February 2006, a member of defendants' staff sent an e-mail to the street team for plaintiffs' album.[1] This e-mail encouraged the team members to move plaintiffs' album to more prominent locations in record stores, and to move a competing artist's album to less prominent locations – or hiding copies of such album. On March 1, 2006, the staff member sent another e-mail to the street team telling them the previous e-mail had been a joke.

On August 3, 2006, plaintiffs sent a letter to defendants, purporting to terminate the agreement, including the purported termination of any licenses defendants possessed for plaintiffs' recordings. In plaintiffs' letter, they alleged that they were permitted to terminate

---

[1] A street team is a group of people used to generate publicity for a record company's artists.

the agreement and the licenses because defendants had (1) failed to account for certain royalties under the agreement, applied wrong percentages to royalty rates and mis-charged advertising costs; (2) engaged in outrageous conduct by way of the street team e-mail; (3) drafted a "Manifesto" which was falsely attributed to the band, portraying it as in a war with artists in other genres; (4) physically threatened professional music industry figures, as well as HH's personal manager; (5) damaged HH's relationship with producers and other industry professionals by failing to account for or pay royalties under the agreement; and (5) intentionally interfered with HH's relationship with retailers with respect to HH merchandise. Plaintiffs' letter purported to rescind the agreement. Subsequent to receipt of this letter, defendants continued to manufacture and market plaintiffs' albums. On August 7, 2006, plaintiff filed the instant action.

Plaintiffs' complaint alleges that the agreement between plaintiffs and defendants was a non-exclusive agreement for performance, granting defendants a non-exclusive implied license to manufacture and market plaintiffs' albums, and the use of plaintiffs' name. Plaintiffs allege that the duty to perform, and the license, were nullified when plaintiffs sent their letter of termination because the agreement and the license were terminable at-will. Alternatively, plaintiffs allege that the agreement and license were non-exclusive, making the license terminable at the will of the licensor. Plaintiffs seek a declaratory judgment with regards to the characterization of the agreement and any licenses found therein. Plaintiffs allege that since the license was terminated, defendants infringed plaintiffs' copyright and trademark when they continued to market plaintiffs' albums and use plaintiffs' name in violation of 17 U.S.C. § 501 *et seq.* and 15 U.S.C. § 1125(a). Plaintiffs further allege defendants engaged in unfair competition through these same actions, in violation of the Lanham Act. 15

U.S.C.§ 1125(a). Plaintiffs also allege a number of state law claims arising out of defendants' conduct, including the tort of false light, fraud, interference with business relations, rescission and unjust enrichment.

On August 28, 2006, plaintiffs filed a motion to bifurcate claims and expedite discovery with regard to the declaratory judgment claim. Defendants filed their answer and counterclaims on September 8, 2006, and filed their motion to dismiss pursuant to Rule 12(c) on September 22, 2006. Because plaintiffs sought expedited ruling on the declaratory judgment, the motion to dismiss was set before Judge Shadur, sitting in this court's stead, on October 18, 2006. Judge Shadur orally dismissed Count IX for declaratory judgment to the extent that it was premised upon the agreement being terminable at-will (def. mo. for ruling, exh. B) – he held that a reading of the agreement negated such a finding. He dismissed Counts I and II for copyright and trademark infringement to the extent that they, too, were based on the agreement being terminable at-will. Plaintiffs then filed a motion for reconsideration or clarification on October 31, 2006. On November 7, 2006, Judge Shadur orally clarified his order, stating that he had not dismissed Counts I, II and IX in their entirety, just to the extent they relied on the agreement being terminable at-will (def. mo. to rule, exh. C). He clarified that he was not ruling as to the exclusivity of the agreement or on a termination-for-cause theory.

On January 10, 2007, knowing we would be absent from court during the month of January, we offered guidance to the parties regarding the motion to dismiss, but did not make any substantive rulings (docket no. 55). We did, however, deny plaintiffs' motion to bifurcate claims and expedite discovery. *Id.* We now take up the portions of the motion to dismiss that have not already been addressed.

## ANALYSIS

This court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b). We have supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise out of a common nucleus of operative fact. United Mine Workers v. Gibbs, 383 U.S. 715, 724 (1966). We also have subject matter jurisdiction pursuant to 28 U.S.C. §1332 – plaintiffs are residents of Ohio, defendants are residents of Illinois, and the amount in controversy exceeds $75,000.

The standard of review for motions to dismiss made pursuant to Rule 12(c), is the same as for Rule 12(b)(6). Olson v. Wexford Clearing Serv. Corp., 297 F.3d 488, 490 (7th Cir. 2005). Dismissal is proper only when it appears beyond doubt that plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The well-pleaded allegations of the complaint must be accepted as true, and the court must draw all reasonable inferences in favor of plaintiff. McMillan v. Collection Prof'ls, Inc., 455 F.3d 754, 758 (7th Cir. 2006). However, a copy of any written instrument which is an exhibit to a complaint is considered to be a part of the pleadings (Rule 10(c)), and as a general principle, when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations. Graue Mill Dev. Corp. v. Colonial Bank & Trust Co., 927 F.2d 988, 991 (7th Cir. 1999). Furthermore, we are not obliged to accept as true plaintiffs' legal conclusions or unsupported conclusions of fact. County of McHenry v. Ins. Co. of the West, 438 F.3d 813, 818 (7th Cir. 2006).

### Count IX - Declaratory Judgment

The declaratory judgment plaintiffs seek in Count IX can be broken down into two parts. First, plaintiffs seek a judgment that the agreement does not bind them to record

exclusively for defendants. Second, plaintiffs seek a judgment that they own the copyrights to the first two albums and that any license they may have granted defendants to those albums by way of the agreement was non-exclusive and, therefore, terminable at any time. We take each of these parts in turn.

Exclusivity of Services

Defendants argue that the agreement requires plaintiffs to record exclusively for defendants during the life of the agreement. Defendants argue that any other interpretation would be untenable because it would be absurd to think plaintiffs could record albums for defendants while simultaneously re-recording new versions of the same albums for another company.

Plaintiffs argue that by "non-exclusive," they do not mean they could deliver the same albums to two different companies, but that they are free to record other albums with other companies while they carry out their obligations to defendants.

Both parties agree that the agreement is not ambiguous and, in fact, cite the same case for the proposition that the court will not look beyond the language of the agreement in such situations. Palda v. General Dynamics Corp., 47 F.3d 872, 874 (7th. Cir. 1995). Despite this, in the very next section of its memorandum, defendants point this court to a well-known music industry publication which states that the industry standard is for recording agreements to require exclusive performance. Defendants attached selected pages from the book as an exhibit to their motion to dismiss. Such exhibits, however, cannot be considered on this motion without converting it to a motion for summary judgment under Rule 12(c). Additionally, to consider these exhibits would not only require us to convert the motion, but would require us to find that the agreement is indeed ambiguous, since we would be looking beyond the four

corners of the agreement. This would in turn mean its interpretation is not a matter for a motion to dismiss. Dawson v. General Motors Corp., 977 F.2d 369, 373 (7th Cir. 1992). Defendants clearly do not believe this is so.[2]

We find that the agreement is unambiguous as to this point, and that plaintiffs' services to defendants during the term of the recording agreement are not exclusive. The agreement contains no exclusivity provision, nor does any of its language appear to prevent plaintiffs from recording elsewhere during the life of the agreement.

We also do not see how this interpretation would be commercially absurd. Our interpretation does not mean plaintiffs can market the same albums to another record company, or even re-record the same tracks, and plaintiff clarified that this was not their argument. It simply means plaintiffs are free to record other albums or tracks for another record company during the life of the agreement with defendants. Defendants even admit in their motion that within the industry standard there are exceptions to the rule of exclusivity. Therefore, defendants' motion as to plaintiffs' exclusivity of services under the agreement is denied.

---

[2] Even if we were to consider defendants' exhibit, it would not change our finding here. While it may be industry standard for recording agreements to be exclusive as to performance, this is generally because exclusivity provisions are put into the agreements. See 6 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 30.03(a) and Form 30.03(a)(1) (2006). Further, defendants point to no case which allows for exclusive services without an explicit provision, and we have found none. In fact, all the cases we have been able to find requiring exclusive services have derived such a finding from the language of the agreement itself. See e.g. T.E.A.M. Entm't, Inc. v. Douglas, 361 F. Supp. 2d 362, 364 (S.D.N.Y. 2005)(agreement provided that Ashanti would provide her personal services exclusively to T.E.A.M. for the duration of the agreement); Frost Belt Int'l Recording Enterprises, Inc. v. Cold Chillin' Records, 758 F. Supp. 131, 133 (S.D.N.Y. 1990)("During each Contract Period you will provide exclusive Artist's services to Tuff City"); Croce v. Kurnit, 565 F. Supp. 884, 887 (S.D.N.Y. 1982)(agreement provided that Croce would perform and record exclusively for CP&W); Bertolino v. Italian Line, 414 F. Supp. 279, 284 (S.D.N.Y. 1976)(agreement called for plaintiff to devote his services exclusively); Phillips v. Audio Active Ltd., 2005 WL 3309652, *1(S.D.N.Y. 2005)(plaintiff agreed to provide "his exclusive services as a recording artist" to defendant); EMI Latin v. Bautista, 2003 WL 470333, *2(S.D.N.Y. 2003)(agreement that manager would provide the exclusive services of the Kumbia Kings as recording artists).

## Copyright Ownership and Licensing

Defendants argue that we should dismiss plaintiffs' claim that they are the rightful owners of the copyrights, or in the alternative, if we find plaintiffs to be the owners of the copyrights, we should dismiss plaintiffs' claim that any license was non-exclusive because the agreement can only be interpreted as granting an exclusive license.

Defendants first argue that they own the copyrights to the two albums and the DVD, either because they were a "work-for-hire," or because the rights were assigned to defendants in the agreement. We address each in turn.

The Copyright Act of 1976 provides that copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). There is an exception, however, for "works made for hire." In such situations "the employer or other person for whom the work was prepared is considered to be the author" and owns the copyright, unless there is a written agreement stating otherwise. The Act provides that there are two ways a work can be for hire:

> (1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101.

Sound recordings are notably exempt from the list of works that can be specially commissioned as works-for-hire. *See* In re Napster, Inc., 2004 U.S. Dist. LEXIS 7236, *23-24 (N.D. Cal. 2004)(recalling recording industry's attempt and failure to add sound recordings to the list). Therefore, the only way this can be a work-for-hire is if plaintiffs are employees of defendants.

In order to determine whether a party is an employee or an independent contractor, we turn to the general rules of agency. <u>Community for Creative Non-Violence v. Reid</u>, 490 U.S. 730, 751 (1989). We consider numerous factors, such as

> the hiring party's right to control the manner and means by which the product is accomplished ... the skill required, the source of the instrumentalities and tools, the location of the work, the duration of the relationship between the parties, whether the hiring party has the right to assign additional projects to the hired party, the extent of the hired party's discretion over when and how long to work, the method of payment, the hired party's role in hiring and paying assistants, whether the work is part of the regular business of the hiring party, whether the hiring party is in business, the provision of employee benefits and the tax treatment of the hired party.

*Id.*

This determination is necessarily fact-intensive, and on this motion to dismiss we certainly do not have all the facts before us. We are unable to decide on the pleadings that plaintiffs are or are not employees of defendants, and therefore cannot say that plaintiffs have failed to state a claim upon which relief can be granted.

Because we cannot decide ownership of the works on this motion, it follows that we cannot decide the nature of any licenses to the works. Therefore, we deny defendants' motion to dismiss Count IX of the complaint.

### Counts I, II, and III - Copyright and Trademark Infringement

Counts I and II of the complaint allege willful copyright and trademark infringement, in violation of 17 U.S.C. § 501 *et seq.* and 15 U.S.C. § 1125(a), respectively. Count III alleges unfair competition in violation of the Lanham Act. 15 U.S.C. § 1125(a). Because we are unable to determine on this motion who is the rightful owner of the copyrights in question, we must necessarily accept plaintiffs' allegations as true that they own the copyrights. Therefore, defendants would have to provide evidence that they in fact own the copyrights in order for

us to grant their motion to dismiss. This they have not done. Therefore, we deny defendants' motion to dismiss Counts I through III, as they are necessarily predicated on a determination of ownership, although whether or not the contractual relationship continues will have a major impact on the rights and obligations of the parties.

<u>Count IV - Invasion of Privacy - False Light</u>

Defendants argue that Count IV of the complaint should be dismissed. They first argue that Ohio law applies, and Ohio law does not recognize the tort of false light. Defendants argue that Ohio law applies to this case because the tort of false light is analogous to that of defamation. In defamation cases, Illinois uses the victim's domicile as the deciding factor with regard to choice of law. Thus, argues defendants, the victim's domicile should also control choice of law in this false light claim, and Ohio law should be applied. They argue that since Ohio does not recognize the false light tort, plaintiffs' claim should be dismissed.

We agree with defendants that Ohio does not currently recognize the tort of false light. The Ohio Supreme Court made this clear in <u>Yeager v. Local Union 20, Teamsters</u>, 453 N.E.2d 666, 669-70 (Ohio 1983), and, when faced with the opportunity to revisit the issue in <u>M.J. DiCorpo, Inc. v. Sweeney</u>, 69 Ohio St. 3d 497 (Ohio 1994), the court declined to do so.[3]

This fact makes little difference, however, because we find that Illinois law applies to plaintiffs' claim. A federal court deciding pendent state law claims, or sitting in diversity,

---

[3] Plaintiffs argue that a number of Ohio appellate courts have recognized the tort of false light since then. We do not agree. Four of the cases cited by plaintiffs merely set out the four privacy torts, including false light, but then go on to analyze one of the others. *See* <u>Peterman v. Stewart</u>, 2006 WL 2590072 (Ohio App. Ct. 2006); <u>James v. Bob Ross Buick, Inc.</u>, 855 N.E.2d 119 (Ohio App. Ct. 2006); <u>Henson v. Henson</u>, 2005 WL 3193841 (Ohio App. Ct. 2005); <u>Piro v. Franklin Twp.</u>, 656 N.E.2d 1035 (Ohio App. Ct. 1995). Only one case actually has any discussion of false light, and there the court merely states that the facts do not support a false light claim. *See* <u>Brooks v. Lady Foot Locker</u>, 2005 WL 1163018 (Ohio App. Ct. 2005). Notably, the authority for the proposition in all of plaintiffs' cases that a false light is one of the privacy torts in Ohio can be traced back to a case that plaintiff also cites, <u>Killilea v. Sears, Roebuck & Co.</u>, 499 N.E.2d 1291, 1294 (Ohio App. Ct. 1985), which states the exact opposite – that Ohio does not recognize a false light claim. That case derives its authority directly from <u>Yeager</u>. *Id.*

applies the choice of law rules of the state in which it sits. In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1015 (7th Cir. 2002); Erickson v. Baxter Healthcare, Inc., 94 F. Supp. 2d 907, 910 (N.D. Ill. 2000). In determining choice of law for tort actions, Illinois uses the "most significant relationship" approach of the Restatement (Second) of Conflicts of Law. Esser v. McIntyre, 169 Ill. 2d 292, 661 N.E.2d 1138 (Ill. 1996). Illinois also recognizes false light as one of the privacy torts. Lovgren v. Citizens First Nat'l Bank, 126 Ill. 2d 411 (Ill. 1989).

Defendants argue that false light is analogous to defamation, and therefore, under Illinois choice-of-law provisions, plaintiffs' domicile controls. While it is true that Illinois uses the domicile of the victim as the deciding factor for choice of law in defamation actions, defendants cite no authority for an analogy between defamation and false light claims, and we find none. In the absence of such authority, we apply the full "most significant relationship" test to determine choice of law. *See* Harman v. Gist, 2003 WL 22053591 (N.D.Ill. 2003)(separating choice-of-law determination for defamation from determination of privacy claim).

The factors considered in determining choice of law are (1) the place of the injury, (2) the place where the injury-causing conduct occurred, (3) the domicile of the parties, and (4) the place where the relationship between the parties is centered. In re Trans Union Corp. Privacy Ltg., 211 F.R.D. 328, 343 (N.D. Ill. 2000). We also consider the interests and public policies of potentially concerned states as they relate to the transaction. *Id.* The injury and the injury-causing conduct in this case occurred in Illinois – that is where Victory Records' principle place of business is located, where defendant Brummel claims residence, and from where the Victory employee sent the offending e-mail to the street team. *See* Grudoff v. American Airlines, Inc., 1991 WL 208890 (N.D. Ill. 1991). The domicile of the parties is evenly

split between Illinois and Ohio, but the place where the relationship was centered was in Illinois, as that is where plaintiffs delivered the recordings and where the marketing for plaintiffs' recordings was developed. Illinois law applies to this action and, therefore, defendants' motion to dismiss is denied as to Count IV.

Count V - Fraud

Next, defendants claim that Count V, plaintiffs' fraud claim, should be dismissed because it is merely a breach of contract using the language of fraud. We agree. A breach of contract is not sufficient to find fraud. Perlman v. Zell, 185 F.3d 850, 853 (7th Cir. 1999). Under both Illinois and Ohio law, injury from fraud must be more than just damages arising from a breach of contract. Avery v. State Farm Mut. Auto. Ins. Co., 216 Ill. 2d 100, 100-102(Ill. 2005); Medical Billing, Inc. v. Medical Mgmt. Sciences, Inc., 212 F.3d 332, 339 (6th Cir. 2000). Here, plaintiffs have not pled anything more than a breach of contract.

In their complaint, plaintiffs allege that defendants issued a series of fraudulent royalty statements that were required under the terms of the agreement. They allege that defendants knew that the royalty statements were fraudulent and intended that plaintiffs rely on them as accurate and continue to perform under the agreement, which plaintiffs did. This is no more than a breach of contract claim dressed up in the language of fraud. Plaintiffs have made no allegations that they were induced to take any action (such as contract), or refrain from taking any action (such as terminate a contract that they had the right to terminate) because of these allegedly fraudulent royalty statements, nor could they – they were already bound by the agreement. Furthermore, the option clause in the agreement was not construed to plaintiffs' benefit, it was solely exercisable by defendants. Thus, plaintiffs were at all times required to perform under the agreement in the absence of a breach. Because plaintiffs' allegations do not

rise above the level of a breach of contract, Count V is dismissed.

### Count VI - Interference with Business Relations

Defendants argue that Count VI of plaintiffs' complaint, alleging interference with business relations, should be dismissed for failure to state a claim. We agree. While it is true that plaintiffs need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief" (Rule 8(a)(2)), plaintiffs' allegations here do not rise even to that level. In Count VI, plaintiffs have alleged only the barest of legal conclusions – merely parroting the language of the elements required for a claim. Plaintiffs allege an expectancy of a valid business relationship with a merchandise retailer, "Hot Topic," but nowhere in their entire complaint, neither in this count nor in their background facts, do they ever mention this or any relationship with them. Nor do they give any information as to how defendants' "knew of and intentionally interfered with this expectancy." Federal notice pleading does not require much beyond bare legal conclusions, but we think defendants are entitled to a bit more notice of the nature of plaintiffs' claims. Conley v. Gibson, 355 U.S. 41, 47 (U.S. 1957). Therefore, we dismiss Count VI, but with leave to amend.

### Count VII - Rescission

Defendants argue that plaintiffs' rescission claim, Count VII, should be dismissed. "Rescission" is an extraordinary remedy that involves the judicial termination of a party's contractual obligation. It is a court-ordered "unwinding" of the contract with the goal to return the parties to their positions prior to contracting. Jones v. Infocure Corp., 310 F.3d 529, 535 (7th Cir. 2002). Because both states' laws are similar, we need not engage in a choice-of-law discussion. See International Admrs., Inc. v. Life Ins. Co., 753 F.2d 1373, 1376 (7th Cir. 1985). Under both Illinois and Ohio law, rescission is generally granted only for fraud, mutual

mistake or breaches of contract so material that they go to the very root of the contract. Mor-Wood Contractors, Inc. V. Ottinger, 205 Ill. App. 3d 132, 141-42 (Ill. App. Ct. 1990); Miller v. Bieghler, 123 Ohio St. 227, 233 (Ohio 1931); Wannemacher v. Cavalier, 2004 Ohio 4020, *45 (Ohio Ct. App. 2004). In both states, a claim of rescission generally requires the rescinding party restore the other party to the status quo ante. Mor-Wood, 205 Ill. App. 3d at 141-42; England v. O'Flynn, 2002 Ohio 103 (Ohio Ct. App. 2002). Plaintiffs here have made no claims that they would restore defendants to the status quo ante, nor do we see how they could do so.

Plaintiffs argue that failure to be able to restore the parties to the status quo ante is not a precondition of rescission, at least not under Illinois law. See International Ins. Co. v. Sargent & Lundy, 242 Ill. App. 3d 614, 629-30, 609 N.E.2d 842 (1st Dist. 1993). The case that plaintiffs rely on, however, itself relies on another case which expounds on this notion. In Hakala v. Illinois Dodge City Corp., 64 Ill. App. 3d 114, 120 (Ill. App. Ct. 1978), the court found that

> rescission is an equitable doctrine and as stated in 77 Am. Jur. 2d Vendor and Purchaser § 565 (1975):
>
>> As in other cases of rescission, the vendee is ordinarily required to restore the status quo, insofar as he has received any benefit, as a condition of his right to rescind; but he is not required to put the other party in the same situation in which he was before the contract, where the latter has rendered it impossible by the nature of his fraud or other act, or where from the nature of the land and the purpose for which it was purchased, it is impossible to restore the status quo, as where the purchase was of timberland and the purchaser had cut timber thereon; in such a case all that the purchaser can be required to do is to reimburse the vendor for the value of the timber removed.

Thus, while plaintiffs are correct that it would be impossible for them to "unrecord" their albums and impossible for defendants to "unsell" them, in order for plaintiffs to maintain a

claim for rescission they must be willing to reimburse defendants for the benefits plaintiffs derived under the agreement. We do not find such willingness in plaintiffs' complaint and therefore they cannot maintain a claim for rescission.[4] Count VII is dismissed.

## Count VIII - Unjust Enrichment

Defendants argue that plaintiffs' unjust enrichment claim, Count VIII, should be dismissed. The theory of unjust enrichment is based on a contract implied in law. People ex rel. Hartigan v. E & E Hauling, Inc., 153 Ill. 2d 473, 497 (Ill. 1992). To recover under this theory, plaintiffs must show that defendant voluntarily accepted a benefit that would be inequitable for him to retain without payment. Id. Under both Illinois and Ohio law, where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application. Id.; Bumbera v. Hollensen, 2000 Ohio App. LEXIS 1000 (Ohio Ct. App. 2000).

Plaintiffs' claim for unjust enrichment fails for two reasons. First, here plaintiffs have alleged a contractual agreement between the parties. They then incorporated the existence of that contractual agreement into their unjust enrichment claim. While plaintiffs are entitled to plead alternative theories under Rule 8(e)(2), it is well-settled that plaintiffs' unjust enrichment claim must not include allegations of the existence of a specific contract. See Team Impressions, Inc. v. Chromas Technologies Canada, Inc., 2003 WL 355647, *4 (N.D.Ill. 2003);

---

[4] Even if plaintiffs were willing, we are not at all certain that the facts here support rescission. As we have noted above, plaintiffs have failed to make out a claim for fraud. The breaches, then, that plaintiffs complain of as being "so material as to go to the root of the contract," are the underpayment (not the non-payment) of royalties. Numerous courts in circuits more familiar with these types of cases have held that the underpayment of royalties (absent fraud or the total lack of payment) does not support the extreme remedy of rescission. See Nolan v. Sam Fox Publishing Co., 499 F.2d 1394, 1399 (2d Cir. 1974)(partial royalty payments distinguished case from one warranting rescission); see also Cafferty v. Scotti Bros. Records, 969 F. Supp. 193, 205 (S.D.N.Y. 1997); Vestron, Inc. v. National Geographic Soc., 750 F. Supp. 586, 594 (S.D.N.Y. 1990); Peterson v. Highland Music, 1995 U.S. Dist. LEXIS 22008, *9-10 (C.D. Cal. 1995).

Cole-Haddon, Ltd. v. Drew Philips Corp., 454 F. Supp. 2d 772, 777 (N.D. Ill. 2006).

Secondly, plaintiffs' claim must fail because the allegations are merely injuries plaintiffs suffered from defendants' alleged breach of its contractual obligations. Plaintiffs argue in their response that the complaint alleges the termination of the agreement, and that they are claiming unjust enrichment through defendants' continued exploitation of plaintiffs' property after termination. There is no allegation in Count VIII regarding unjust enrichment after the termination of the agreement. Plaintiffs' claims center specifically around defendants' alleged "fraudulent accounting and failure to pay HH royalties and fees for the sale and other exploitation" of plaintiffs' recordings and merchandise. Because all of these allegations are wrapped up in the terms of a specific contract, which plaintiffs allege exists, plaintiffs cannot claim unjust enrichment. Therefore, Count VIII is dismissed.

Termination for Cause

Finally, defendants argue that plaintiffs cannot claim a cause of action for termination for cause because they strategically decided not to claim such action in their complaint. Defendants argue that plaintiffs' attempt to create such a cause of action in their response memorandum is an improper attempt to amend their complaint through their response to a motion to dismiss. We do not agree. Under the federal rules, plaintiffs are not required to plead specific legal theories as long as the facts of their complaint support such theories. Young v. Sheahan, 2000 WL 288516, *1 (N.D. Ill. 2000). Here, the facts of plaintiffs' complaint support an inference of termination for cause. Plaintiffs' letter purporting to terminate their agreement with defendants states as much.[5] Therefore, we find that plaintiffs are not barred

---

[5] The relevant portion of plaintiffs' letter states in pertinent part, "you should be aware that Hawthorne Heights does, in fact, have more than ample cause to terminate the licenses and rescind the Agreement because of, among other things, the following outrageous and egregious acts by you and Victory:

from claiming termination for cause and are permitted to amend their complaint to include such a cause of action.

## CONCLUSION

For the foregoing reasons, we grant defendants' motion to dismiss as to Counts V, VI, VII and VIII of plaintiffs' complaint, and deny the motion as to Counts I, II, III, IV and IX.

　　　　　　　　　　　　　　　　　　　　　　　　／s／ James B. Moran
　　　　　　　　　　　　　　　　　　　　　　　　JAMES B. MORAN
　　　　　　　　　　　　　　　　　　　　　Senior Judge, U. S. District Court

March 1, 2007.

---

(listing acts)." (plf. cplt, exh. B).