IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERON BUCCIARELLI-TIEGER, et al., )
)
        Plaintiffs, )
)
vs. ) No. 06 C 4258
)
VICTORY RECORDS, INC., et al., )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Defendants move this court to reconsider or clarify its memorandum opinion and order of March 1, 2007, in which the court, in relevant part, denied defendants' motion to dismiss plaintiff's complaint to the extent that plaintiff's allegations rested on the recording contract being non-exclusive. We found nothing in the contract that required plaintiffs to record exclusively for defendants during the life of the contract. Defendants now seek reconsideration or clarification of that interpretation. We deny defendants' motion.

## BACKGROUND

Plaintiffs, members of a band named "Hawthorne Heights," entered into a recording contract with defendant, Victory Records, which created an initial contract period in which plaintiffs would record a sufficient number of masters to constitute a record. Victory was granted four "separate, consecutive, and irrevocable options" to extend the contract term for further "option periods" in which plaintiffs would record additional albums. The initial contract period was set to expire 18 months after the plaintiffs' delivery of the first album. Victory executed its option for a second album within that time frame, and plaintiffs delivered a second album. This second option period was to expire 12 months after plaintiffs' delivery

of their second album. After delivery of the second album, a dispute arose between plaintiffs and Victory. Plaintiffs purported to terminate their contract with Victory, and Victory subsequently exercised its third option. Plaintiffs brought suit against defendants claiming, among other things, that plaintiffs were not bound under the contract to deliver another two albums to Victory, because the agreement was terminable at-will, or, in the alternative, because the plaintiffs terminated the agreement for cause. Plaintiffs also sought a declaration that the contract was non-exclusive. Defendants filed a motion to dismiss, which was granted in part and denied in part by Judge Shadur (sitting in this court's stead), and this court. Defendants seek reconsideration of the March 1, 2007, order to the extent that the contract between plaintiffs and Victory was found to be non-exclusive.

## ANALYSIS

A motion to reconsider is appropriate where (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court. *Id.*; Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990). Motions for reconsideration are not vehicles for rehashing old arguments that have already been rejected. Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000).

Defendants argue that the court made an error of apprehension by not considering the "plain language" of paragraph 1 of the agreement in which, defendant argues, plaintiffs agreed to record four consecutive albums for Victory. Defendants argue that the word

"consecutive" in the agreement modifies the *albums* that plaintiffs must record, and thus the agreement must be exclusive to the extent that it requires plaintiffs to tender their next two recorded albums to Victory. We disagree. The plain language of the agreement states:

> Artist grants to Company four (4) separate, consecutive and irrevocable options, each to extend the Term for further periods ("Option Periods") consecutively commencing upon the expiration of the preceding period and expiring twelve (12) months after the date Artist delivers to Company the last Album constituting Artist's Recording Commitment in that Option Period.

It is clear from this language that what is consecutive are the options granted to Victory, not the albums to be recorded. As we have construed the contract, during each option period plaintiffs must record one album for Victory. Plaintiffs are free to record other albums for other recording labels, or for themselves, during this time, as long as they complete a sufficient number of masters to constitute a record deliverable to Victory during the option period.

Defendants argue that this interpretation renders the contract illusory because there is no time limit in which plaintiffs must record the album for Victory, and thus plaintiffs will continue to put off their Victory album indefinitely. Defendants argue this would not be a commercially feasible contract if interpreted in this way because bands have a finite shelf life and a record company would not create a contract that permitted a band to put off its recording obligations while recording for other labels.

First, as we noted in our previous opinion, defendants could have contracted for the exclusive services of plaintiffs. We cited several cases in which "exclusive services" were required. Second, defendants, as parties to this contract, could have negotiated a limited amount of time for the delivery of the albums. A number of cases indicate where time limits were placed on artists requiring them to record an album, or several albums, within a certain time frame. MCA Records, Inc. v. Newton-John, 90 Cal. App. 3d 18 (Cal. Ct. App. 1979)(two

albums per year); EMI Latin v. Bautista, 2003 U.S. Dist. LEXIS 2612, 2003 WL 470333 (S.D.N.Y. 2003)(album within first three months, subsequent albums within year of first album); Three Degrees Enterprise, Inc. v. Three Degrees Worldwide, Inc., 1989 U.S. Dist. LEXIS 12016, 1989 WL 119697 (E.D. Pa. 1989)(one album per year). That defendants did not negotiate such a clause here does not mean we must interpret plaintiffs' services as exclusive to defendants. Further, we disagree that our interpretation renders the contract illusory. "It is well settled in Illinois that where a contract is silent as to when performance will be completed, a reasonable time for performance will be implied." Murphy v. Roppolo-Prendergast Builders, Inc., 117 Ill. App. 3d 415, 418 (Ill. App. Ct. 1983). Ohio law similarly holds. Oil Chem. & Atomic Workers Int'l Union, Local Union No. 3-689 v. Martin Marietta Energy Sys., 97 Ohio App. 3d 364, 369 (Ohio Ct. App. 1994)("The law implies that performance is to take place within a reasonable time, and that the parties so intended and agreed."). What constitutes a reasonable time is a factual determination, looking at the totality of the circumstances. Id. Plaintiffs agree that they are required to deliver an album to Victory during the third option period within a reasonable time. Under the present interpretation of the contract, plaintiffs are required to deliver an album to Victory within a reasonable time, and if at some point Victory believes that plaintiffs have unreasonably delayed their obligations, defendants are free to pursue their remedies.[1] This is not a commercially unreasonable outcome. See Ahern v. Scholz, 85 F.3d 774, 779 (1st Cir. 1996)(noting that band was earlier sued

---

[1] Defendants argue that it is clear from plaintiffs' own statements that they do not intend to record any albums for Victory. Defendants point to the Hawthorne Heights website which states that the band has terminated its relationship with Victory. We note that among the remaining issues in this case is whether plaintiffs properly terminated their agreement with Victory for cause. If it is found they did, then they would be released from any further obligation to Victory. If, on the other hand, plaintiffs were found to not have properly terminated the agreement for cause, then their obligations remain and plaintiffs' failure to satisfy those obligations would permit Victory to require them to perform.

for failure to timely deliver albums).

## CONCLUSION

For the foregoing reasons, defendants' motion for reconsideration is denied.

_____
JAMES B. MORAN
Senior Judge, U. S. District Court

May 16, 2007.