# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ERON BUCCIARELLI-TIEGER, et al., )
                                    )
           Plaintiffs,       )
                                    )
      vs.                     )     No. 06 C 4258
                                    )
VICTORY RECORDS, INC., et al.,     )
                                    )
          Defendants.     )

## MEMORANDUM OPINION AND ORDER

Plaintiffs move for a preliminary injunction preventing defendants from interfering with Hawthorne Heights' rights to record new material with a producer, or a record label of its choosing. Defendants counter-move for a preliminary injunction prohibiting Hawthorne Heights from making, manufacturing, distributing or selling musical records, directly or through its agents or representatives other than Victory, during the pendency of this action. For the following reasons we grant plaintiffs' motion and deny defendants' motion.

On March 1, 2007, the court entered a memorandum opinion and order granting in part and denying in part defendants' motion to dismiss plaintiffs' complaint. Among other things, the court found that the contract between plaintiffs and Victory was non-exclusive, and, by its lack of exclusivity, permitted plaintiffs to record with other record labels during the term of the contract. Defendants sought reconsideration of that order, arguing that the term "consecutive" in paragraph 1 of the contract modified the albums plaintiffs had to record for defendants, and thus the contract was *de facto* exclusive. We found this argument to be without merit, and ruled on May 16, 2007, that the term "consecutive" modified the options granted to defendant to extend the contract term, but did not require plaintiffs to record four

consecutive albums for defendants.

Plaintiffs seek a preliminary injunction against defendants' interference with plaintiffs' attempt to record outside of the Victory contract. Plaintiffs attempted to negotiate a working arrangement with a record producer, Howard Benson. Plaintiffs claim that defendants have sent a threatening and misleading letter to Benson to prevent him from working with the band. The letter states, in part, that per the order of this court the band is currently bound by the recording contract to produce two more albums for Victory. While the letter does not specifically say that those albums must be produced before the band can record elsewhere, the tone of the letter as a whole permits that inference. The letter threatens Benson with tortious interference if he agrees to work with the band on an album that is not one to be produced for Victory. Plaintiffs also cite to an additional letter authored by defendants' counsel, this time directed at MySpace.com. This letter clearly alleges that "Hawthorne Heights remains obligated under the agreement to deliver their next two albums to Victory." Plaintiffs argue that based on the court's March 1, 2007, order, defendants should be enjoined from interfering with plaintiffs' right to record new material with a producer or label of their choosing. They further allege that the contract entitles plaintiffs to full creative control over all musical decisions, including choosing a producer. Defendants cross-move for a preliminary injunction, seeking to prevent plaintiffs from recording at all, unless it is with Victory and with Victory's approval.[1] Defendants included in their cross-motion a declaration from defendant Brummel,

---

[1]Defendants argument centers mostly on the same points it raised in its motion for reconsideration. Now, however, instead of requesting this court to modify its holding that the contract is non-exclusive, defendants assert that the court already held that the contract was exclusive:

> The real issue requiring this Court's intervention now is whether the Band can record and release its New Album with a record label other than Victory. Clearly, the answer is no, simply because the Band remains contractually obligated to delivery its next two studio albums to Victory, as this Court has already ruled.

Defendants further state that this court's ruling holds that "Hawthorne Heights is obligated to release the New Album on Victory or not at all." That defendants have so misconstrued our order is troubling.

the CEO of Victory.  Plaintiffs object to this declaration.

## ANALYSIS

A party seeking a preliminary injunction must first demonstrate some likelihood of success on the merits, and that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied. Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 11-12 (7th Cir. 1992) citing Lawson Prods., Inc. v. Avnet, Inc., 782 F.2d 1429, 1433 (7th Cir. 1986). If the moving party cannot establish either of these prerequisites, a court's inquiry is over and the injunction must be denied. *Id.* If, however, the moving party clears both thresholds, the court must consider the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied. We must also consider the effect of the injunction on the interests of the public, meaning the consequences of granting or denying the injunction to non-parties. *Id.*

We begin with Brummel's declaration. Plaintiffs object that the declaration does not assert that it is based on personal knowledge and therefore should be dismissed as a whole. They argue that it is replete with hearsay, speculation, and legal conclusions because defendants merely cut-and-paste parts of their cross-motion, numbered the paragraphs, and had the witness sign it as a declaration. We are aware of the striking similarities between the declaration and the cross-motion, though we cannot say that none of the statements in the declaration was made on the personal knowledge of Brummel; indeed, some were. But to the extent that certain declaratory statements lack foundation, are speculative, irrelevant, or constitute inadmissible hearsay or improper legal conclusions, we have disregarded them.

---

Regardless, we reject these duplicate arguments for the reasons cited in our May 16, 2007, opinion and order.

We move on to defendants' motion. Defendants argue that they are likely to succeed on the merits of their claim that plaintiffs are bound to record their next two albums for Victory. They argue that when one carefully reads the terms of the contract it is clear that "consecutive" modifies the albums plaintiffs must record. This argument is the same one we rejected in our denial of defendants' motion to reconsider. There we found that the term "consecutive" modifies the options granted to Victory, not the albums plaintiffs must record, and thus plaintiffs are not bound by the terms of the contract to exclusively record for Victory. It follows that defendants have no likelihood of succeeding on the merits of this claim. Because defendants are unable to satisfy the first prerequisite of a preliminary injunction, our inquiry ends here and we deny defendants' motion.

We then turn to plaintiff's motion. Defendants argue that plaintiffs have not tied their motion for a preliminary injunction to a claim in their complaint. However, it is clear that plaintiffs' motion stems from their claim for declaratory relief as to the exclusive nature of the contract. Defendants argue that plaintiffs cannot premise a motion for preliminary injunction on a claim for declaratory relief. They cite no authority for this proposition and we find none. Plaintiffs correctly point out that numerous courts have issued preliminary injunctive relief in actions involving claims for declaratory judgement. *See e.g.* Buckhanon v. Percy, 708 F.2d 1209, 1211 (7th Cir. 1983); Precision Shooting Equipment Co. v. Allen, 646 F.2d 313, 314 (7th Cir. 1981); Kelly Services, Inc. v. Johnson, 542 F.2d 31, 32 (7th Cir. 1976). It is also worth noting that though not specifically stated, defendants apparently relied on their claim for declaratory relief as the basis for their preliminary injunction motion.[2]

---

[2]Defendants also argue that our awarding of a preliminary injunction would be an "end-run" around our earlier orders denying plaintiffs' motions to bifurcate and expedite discovery on the declaratory judgment claim. This argument is unavailing. We have already determined that the contract is non-exclusive, and awarding a preliminary injunction as to this issue alone is not tantamount to delivering an expedited ruling on plaintiff's entire declaratory judgment claim. That claim involves other issues not

Plaintiffs argue that they demonstrate a likelihood of success on the merits with regards to their declaration that the contract is non-exclusive. The threshold for determining likelihood of success is a low one. Reoland Mach Co. V. Dresser Indus., Inc., 749 F.2d 380, 387 (7th Cir. 1984). To demonstrate it, a party must show that its chances of success on the merits of its claim are better than negligible. Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895-96 (7th Cir. 2001). This court has already found that the contract did not call for the exclusive services of plaintiffs. Thus, plaintiffs' chances of succeeding on the merits of this claim are more than negligible.[3]

Plaintiffs argue that they will suffer irreparable harm if an injunction is not entered. Both plaintiffs and defendants concur that bands have a short shelf- life. Plaintiffs argue that if no injunction is put in place to prevent defendants' interference, plaintiffs will be unable to record new albums independent of Victory during the pendency of the action, which could force the band to lose its momentum. Defendants argue that a denial of an injunction will not prevent plaintiffs from recording, but simply prevent them from recording with anyone but Victory. Further, defendants argue that plaintiffs will still be able to make money through the sale of their current records, tours, and merchandise, much of which does not involve Victory and from which Victory receives no money. But plaintiffs' ability to generate revenue is not the core of plaintiffs' alleged harm. Plaintiffs argue that they are unable to record new material with the producer and label that they desire because of defendants' interference. This

---

implicated in this motion, such as copyright ownership.

[3]Plaintiffs also argue that they are likely to succeed on the merits of their claim that they have complete creative control over musical decisions, including the choosing of a producer. Because we find that the contract is non-exclusive, we need not deal with this argument at this time. The provisions of the contract dealing with creative control over musical decisions is one that only applies to music being recorded for Victory. To the extent that plaintiffs are seeking a producer or other creative control over music to be recorded and distributed outside of the Victory contract, the terms of that contract do not apply. This logic also extends to the copyright ownership of material recorded outside of the agreement.

court has ruled that plaintiffs are not bound by the contract to exclusively record with Victory. For this reason, and because it appears that if no injunction is put in place, Victory will continue to send cease-and-desist letters to any producer, record company or other entity that plaintiffs attempt to work with, we find that plaintiffs have demonstrated irreparable harm.[4]

Having ruled that the threshold requirements have been satisfied, we must balance the harm defendants will suffer if preliminary relief is granted against the harm to plaintiffs if relief is denied. Defendants argue that they will suffer irreparable injury if an injunction is granted. First, they argue that as the copyright owner of all of the band's recordings created within the scope of the agreement, any unauthorized reproduction or sale of those recordings would harm defendants. We note that ownership of the copyrights of the band's already-recorded works, and other works to be recorded with Victory, is an issue yet to be settled. Further, plaintiffs are not seeking an injunction permitting them to reproduce and sell their previous albums without interference from Victory, but one permitting them to record new albums without such interference. Defendants also argue that permitting an injunction will cause the band to record albums outside of the Victory contract, and they will put off their recording for Victory indefinitely, making the contract illusory. Again, we addressed this argument in defendants' motion to reconsider and found that the non-exclusive nature of the contract will not permit plaintiffs to defer their obligations to Victory indefinitely, but that they will be required to record for Victory within a reasonable time. Thus, balancing the hardship to plaintiffs against that of defendants, we find the balance tips in favor of plaintiffs.

---

[4]Defendants argue that a finding of irreparable harm here would render all recording artist contracts unenforceable as it would create a precedent that any interference with an artist's right to record constitutes irreparable harm. That is not the case. We find irreparable harm here because the recording contract is non-exclusive. Victory's attempt to prevent the band from recording elsewhere is a clear interference with the rights granted to the band by the contract. This outcome would have no effect on recording contracts where the artist's services are exclusive to the record company.

Finally, we address the effect on the public. To the extent that public interest is implicated in this proceeding, we agree with plaintiffs that it favors the awarding of an injunction. Defendants argue that there is a public interest in enforcing valid contracts. Baskin-Robbins, Inc. v. Patel, 264 F. Supp 2d 607 (N.D. Ill. 2003). We agree, but find that this interest also seeks to enforce a contract by its terms, and here those terms do not include an exclusivity provision. Thus, we find that the public interest weighs in favor of an injunction.

CONCLUSION

For the foregoing reasons, we grant plaintiffs' motion for preliminary injunction preventing defendants from interfering with Hawthorne Heights' rights to record new material with a producer or a record label of its choosing, and deny defendants' cross-motion for preliminary injunction.

JAMES B. MORAN
Senior Judge, U. S. District Court

May 17 , 2007.